(No. 1711, July 31, 1914)

J. W. PALMER, for himself and other taxpayers of Albuquerque, Appellant, vs. THE CITY OF ALBUQUERQUE, THE AMERICAN TRUST & SAVINGS. BANK, et al., Appellees.

### SYLLABUS BY THE COURT.

1. Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute; they cannot, of course, dispose of property of a public nature, in violation of the trusts. upon which it is held.

P. 295.

2. Property which has ceased to be used, or is not used, by the public, may be sold or leased as the public welfare may demand.

P. 295.

3. Municipal property is not impressed with a public trust until it has been given over, appropriated or devoted to a public use.

P. 295.

4. A deed of conveyance of land, absolute and unconditional on its face, but intended and understood by the par-

ties to be merely a security for the payment of a debt or the performance of some other condition, will be regarded and treated in equity as a mortgage, giving to the parties the relative rights and remedies of mortgagor and mortgagee and nothing more.

P. 298

5. Where land is conveyed by warranty deed, and as a part of the same transaction the grantee leases the premises to the grantor, with the privilege of redeeming or of purchasing the same during the term for an amount equal to a sum loaned by the grantee to the grantor, the transaction is regarded as a mortgage especially when it appears that the rent was to be applied in reduction of the debt or to keep down interest.

P. 298

6. The borrowing of money on the security of property already belonging to the municipality, without giving the lender any recourse against the body corporate or its property other than the particular property pledged to secure the money advanced, if the constitutional limitation of municipal indebtedness be thereby exceeded, is the creation of indebtedness within the prohibition of the Constitution.

·P. 300

Appeal from the District Court, Bernalillo County; Herbert F. Raynolds, Presiding Judge. Reversed and Remanded.

GEORGE S. KLOCK, for Appellant.

Does not contract Exhibit "A" between the defendant city and defendant bank provide for sale of real property of defendant city for payment of its debts? 102 U. S. 472; McQuillin Mun. Corp., Vol. 3, Sec. 1141; 16 Wall. U. S. 452, 644.

Indebtedness Which May be Incurred by Cities. Sec. 13, Art. 9, Const. State of New Mexico; 1 Bouvier's L.

Palmer v. City of Albuquerque, 19 N. M. 285

Dict., Title Debt; 34 Ia. 208, 213; Words & Phrases, VVol. 2, p. 1864; 117 Ga. 263; 17 Idaho 251; 196 N. Y. 178; 91 Pa. St. Rep. 398; 36 Ia. 396; 49 N. J. L. Rep., p. 558; 84 Ill. 626; 105 Ill. 138; 59 Mich. 312; 7 Ohio St. 523; 5 Oreg. 29; 6 Mont. 502; 58 Minn. 418; 35 W. VVa. 605; 200 Ill. 541; 68 Ga. 272; 46 Oreg. 77.

MARRON & WOOD, for Appellees.

In absence of statutory restriction municipal corporation has same power to dispose of real property, which is unaccompanied by trust or easement for benefit of public, that may be exercised by directors of private corporations. Secs. 2400, 2402, 2403, 2462, C. L. 1897; Dillon Munc. Corp., 4th Ed., Secs. 563, 575; 1 V. & B. 226; 4 Kent's Commentaries 281; 12 Vt. 15; 70 Wis. 492; 132 Ind. 558; 51 Ind. 565; 1 Washburn Real Property, 3 Ed., 64; 5 Ohio 204; 43 Mo. 565; 56 Ill. 111; 67 Md. 489.

Contract in question does not create any indebtedness of city, within scope and meaning of the constitutional prohibition. 36 Ia. 396; 91 Pa. St. 398; 53 Pac. 365; 78 Pac. 175; 49 L. R. A. 795; 118 Ia. 161; 63 Minn. 135; 107 Ind. 106; 42 Ia. 614; 99 Wis. 1; 63 Minn. 125; 102 N. Y. 313; 172 U. S. 1; 17 N. Y. 110; 102 N. Y. 313; 27 L. R. A. 769; 9 N. M. 70.

Proposed contract is not an evasion but an honest effort to comply with the Constitution. 101 S. W. 99; 176 Ill. 404; 105 Ill. 138; 6 Wash. 315; 38 Ia. 414; 9 Col. 404; 188 Mo. 148.

### STATEMENT OF FACTS.

The appellant brought this action in the District Court of Bernalillo County, seeking to enjoin the defendants from carrying out a certain contract, which had been entered into between the parties defendant.

Appellant asserted in his complaint that he is a taxpayer of the City of Albuquerque, a municipal corporation; that the defendant city had acquired a tract of land and had been annually raising by taxation a certain sum

each year, for a number of years, for the purpose of erecting on said tract of land a city hall, and had raised by taxation a fund of $29,000, which entire sum had been expended in the erection of a city hall, which at the time is incomplete, the walls, partitions and roof having been erected, and the city finding itself without sufficient funds to complete the building.

Appellant further alleged that at a meeting of the City Council of the City of Albuquerque, held on the 4th day of June, 1914, the American Trust & Savings Bank proposed to the city that the city should convey to said bank the tract of land referred to, upon which the city hall building was in the course of construction, whereupon a resolution was passed authorizing and directing the mayor of said city to enter into a contract with the defendant, the American Trust & Savings Bank, pursuant to which the mayor has executed and delivered on behalf of the city the said contract referred to in said resolution of the city council.

Appellant further alleging in his complaint that the defendant members of the council intend to fulfill said contract and execute to the defendant bank a warranty deed of the premises with its improvements without proper and adequate consideration therefor being received by the city from the grantee; that the value of the lots and improvements thereon is $35,000 and upwards; that said transfer, if made, will amount to a gift by the defendant city to the defendant bank of the said property; that the defendant city is without power or authority in law to convey said property acquired by it for a specific purpose of building and erecting thereon a city hall; that said defendant city is without right, power or legal authority to make a gift of its said real property, notwithstanding the lease and option provided for in said contract to possess and later re-purchase said property; that said contract, if carried out, will amount to a waste of property of defendant city.

The material provisions of the contract between the defendant city and the defendant bank, are as follows:

The defendant city covenants and agrees with defendant bank that it will, on July 1st, 1914, execute and deliver to the bank a good and sufficient deed with covenants of warranty conveying the said premises and improvements thereon to the defendant bank; that the said defendant bank will permit the defendant city through its council and engineer to take charge of the completion of said building in accordance with the plans and specifications theretofore adopted and approved, with such corrections and modifications thereof as the defendant city shall deem just and proper; that the defendant bank will furnish and supply all moneys that may be necessary to complete the erection of said building, and after said building is completed and erected, the furnishings of the same.    The moneys to be furnished and supplied by the defendant bank for such purposes not to exceed in the aggregate the sum of $25,000; that the defendant bank will advance and pay said sums from time to time upon the certificate of the city engineer of the defendant city, showing that the amounts have been expended or necessarily incurred for the purposes aforesaid; that the defendant city shall have an irrevocable right, privilege and option to repurchase from the defendant bank the said premises at any time within the period of ten years from the date of the conveyance thereof, for the amount and purchase price of the sum actually paid and expended in the completion and furnishing of said building; that the defendant city may make and advance payments on account of said option and purchase price, at the end of each period of six months commencing with the conveyance of said premises, and at such periods may pay the whole balance of said option or any part thereof at their option and election; that when the whole amount of said option and purchase price is paid to the defendant bank, its successors or assigns, then, the defendant bank agrees to re-convey to the defendant city or its assigns the said premises free from any defect of title, lien or incumbrance caused or produced or suffered by said defendant bank; that the defendant bank will forthwith, upon receiving said deed of

conveyance, execute and deliver to the defendant city a lease of said premises for the period of ten years from said date, at a rental and compensation to be paid quarterly, beginning three months from the date thereof, the rent and compensation to be determined and computed upon the amount remaining unpaid upon the said option to purchase as it existed at the last preceding date for the payment of rent, which amount shall be determined and interest at the rate of eight per cent per annum computed thereon for the said three months; that the said defendant city shall also pay to the said defendant bank any sums which the latter may have been required to pay for insurance or assessments levied upon said property pursuant to law or which shall have been paid during the like period; which sum for interest and expenditures, as aforesaid, shall be and constitute the amount of rental payable to the defendant bank for the said quarterly period; that the defendant city will keep the premises insured for an amount equal to the amount remaining unpaid upon said option to purchase during the period, for the benefit of said defendant bank, and in the event of the failure of said defendant city to insure said premises the defendant bank may cause such insurance to be secured and the amount it may pay therefor shall be added to the rental for the quarter during which the same shall be paid; that should the defendant city at any time fail to make when due and payable, the payments of rental, then the rental so due and payable at the end of any quarter shall bear interest at the rate of eight per cent per annum until the same shall be paid; that should the defendant city fail to make such payment of rental and remain in default of such payments for a full period of two years thereafter, then, and at the expiration of such period of two years, the right of the said defendant city under the lease and option provided for shall cease and terminate; that the defendant bank may associate with itself other parties in the performance of said contract upon condition that such other parties shall furnish and supply any portion of the moneys provided therein,

and the party or parties so supplying and furnishing said moneys shall be deemed interested in the property conveyed, and in said contract to the amount and extent so supplied by them through the said defendant bank and to the extent of the moneys so supplied by such other parties the defendant bank shall hold the title to said premises in the capacity of trustees for said other parties.

The defendants joined in their answer and alleged: That the assessed valuation of the property within the defendant city, as shown by the last assessment for state and county purposes, was less than $4,500,000, and that the existing indebtedness of the defendant city at the time of said answer is in excess of $300,000; that the defendant city had used all the funds available for the erection of a city hall, including $29,000 theretofore raised for such purpose; that said city hall is incomplete and unless money be had for the completion thereof the work thereon must cease and the defendant city will procure no benefit from the moneys already expended; that said defendant city has made diligent efforts to borrow money for the completion of said building, and has been unable to secure a loan from any source for such purpose, owing to the limitation of such indebtedness contained in the State Constitution, and that the debts of defendant city at the present time is in excess of such constitutional limitation; that the defendant city expends annually, approximately, the sum of $2,000 to rent quarters for the accommodation of city officials; that if the city hall is allowed to remain in its present incomplete state until the city may by taxation acquire sufficient means to complete the same, there is danger that the premises will greatly depreciate in value, and be endangered and damaged by the elements, and run the risk of total destruction, and the defendant city will be deprived of the use thereof and the saving of rent which will accrue to the defendant city by the completion of the said building; that the rental provided to be paid in the contract set forth in the complaint to the defendant bank for the use of said premises, will be much less in amount than the rental now paid by the de-

Palmer v. City of Albuquerque, 19 N. M. 285

fendant city to provide premises for the transaction of its business; with the amount raised each year by taxation for city hall purposes and the saving in rent effected under the terms of said contract the defendant city will be able to repay to the defendant bank the money provided to be expended by it in the completion of said city hall, in much less time than the ten years' lease and option provided in the said contract; that the defendant city after diligent effort has been able to find no other way or means than to pursue the plan set forth in said contract, whereby it can complete the city hall and have the use thereof for a number of years to come; that the Constitution of the State and provisions of the law applicable to the situation preclude the city from entering into a binding contract with any person for the completion of said city hall; that the moneys to be advanced by the said defendant bank and the use thereof and the rate of rental therefor allowed to the city, and the consideration contained in the lease and option are full and ample consideration for the property rights in said building proposed to be conveyed to said bank and that no damage can result to the taxpayers of the defendant city through the completion and carrying out of the said contract; that the said defendant city and the other defendants in entering into said contract were acting in good faith and made said contract after full notice and publication of its terms and conditions; that said contract was authorized by the unanimous vote of the city council of the defendant city; that the lots upon which said city hall is in process of erection were acquired by said defendant city solely as a prospective site for said city hall, and not for any special or public use, and had been held by said defendant city for such purpose, the prayer of the defendants being that the court adjudge the contract set forth in the complaint to be a proper and enforcible one between the defendants executing the same, and that defendant city is lawfully authorized and empowered to enter into said contract, and to carry out its conditions.

To this answer a demurrer was filed, setting up that

the facts stated in the answer were insufficient in law upon the face thereof to authorize the defendant city to deed and convey, or authorize the deeding and conveyance, of its real property to the defendant bank and that the deed of conveyance therein intended to be delivered would amount to a gift and waste of the real property belonging to the city; that the city and its officers are without legal power to convey and dispose of its real property; that the plan and scheme set forth in the answer amounts to a contract of indebtedness on behalf of the city, and a violation of the constitutional provision limiting the debts which may be incurred by the said city to four per cent of its assessed valuation. This demurrer was over-ruled by the district court, and the appellant electing to stand upon his demurrer to the answer and refusing to plead further, a decree of the district court was entered in the cause to the effect that the defendants, the said City of Albuquerque, and the members of the City Council thereof, have full power and authority to convey and deed the property known as the city hall building, belonging to the City of Albuquerque and described in the complaint, to the defendant, the American Trust & Savings Bank, in accordance with the terms and purposes mentioned and described in the contract, annexed to the complaint, and that the consideration provided and prescribed in said contract, is a full, complete and adequate consideration for the transfer thereof, and is for the best interests and welfare of the city.

The court dismissed the complaint of appellant, from which judgment and decree this appeal was prayed and allowed.

## OPINION.

HANNA, J.—Nine assignments of error are presented which resolve themselves into two, or at most three, questions of law.

The first may be stated as a lack of power in the City, and its officials, to convey and dispose of its real property; in connection with which may be considered a possible

collateral question, assuming a conditional right to convey, of whether the conveyance proposed, in the case, would amount to an act of waste.

We do not think it necessary to consider the first phase of this question from the standpoint of the contention that property held for public uses cannot be subjected to the payment of the debts of the City.

The contract might ultimately so result and in that respect prove objectionable, but as this case, in our opinion, turns upon other grounds, we will pass to a consideration of the other contentions.

The more direct attack upon the present question is based upon the theory that property devoted to a public use cannot be sold or leased without special statutory authority.

The charter, or other legislative acts, is the source of power in respect to the property rights of municipal corporations, and when silent the implied power exists to acquire and alienate property. Dillon Mun. Corp. (5th Ed.) Sec. 977.

The general rule, just stated, is subject to the qualification, which is so well stated by the same author, that we quote it with approval:

"Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute; they cannot, of course, dispose of property of a public nature, in violation of the trusts upon which it is held. * * * * Dillon Mun. Corp. (5th Ed.) Sec. 991.

By property of a private nature is meant property which the corporation may own in the same manner that a natural person may own property as contradistinguished from the property of the municipality which has become impressed by a public trust by having been dedicated to a public use and is referred to as property of a public nature.

Our statutory provisions affecting municipal corporations contain no restriction as prohibition upon their power of alienation, and it, therefore, only remains

to inquire whether the property in question has been so impressed with a public trust as to destroy the power of alienation, in the city or its officials, with respect thereto.

Generally speaking, property devoted to a public use cannot be sold or leased without special statutory authority, although property which has ceased to be used, or is not used, by the public, may be sold or leased as the public welfare may demand.

McQuillen Mun. Corporations, Sec. 1141; Fort Wayne vs. Lake Shore & M. S. Ry. Co., 132 Ind. 558.

It is thus to be seen, as pointed out by the Supreme Court of Indiana, in the case last cited, that while municipal corporations cannot dispose of property of a public nature in violation of the trusts upon which it is held, there is a distinction between property purchased for a public use and not yet dedicated, and property which is purchased for that purpose and actually dedicated to that use.

We use the term "dedicated" in the sense, defined by Webster, devoted to a use; appropriated, given wholly to.

In this sense of the word, municipal property is not impressed with a public trust until it has been given over, appropriated, or devoted to a public use.

As pointed out in the brief of appellees, the building in its present condition is of no more use as a city hall than were the vacant lots before the erection of the building was commenced. Neither the lots nor the building have in any way been opened or devoted to any particular use and cannot be until the building is completed and ready for use. We, therefore, do not consider that this property has been so impressed with a public trust as to defeat the right of alienation.

The question of waste is more difficult. If it clearly appeared from the contract under consideration that the property of the city is placed in jeopardy, then undoubtedly this contract is an improvident one, calculated to result in an act of waste.

It has been strongly urged, on the other hand, that the

chance of loss is of a negligible quantity and the benefits to be derived of such a character as to demand that the slight risk of loss be undertaken.

Therefore the alleged act of waste is not of cuch a character as to be plain or undisputed, for which reason we do not desire to rest our opinion of the case upon this ground.

The principle contention of appellant, and upon which he bases the larger portion of his argument, is that the plan set forth in the contract between the city and the American Trust & Savings Bank, amounts to a contract of indebtedness by the defendant city in violation of Section 13 of Article IX of the Constitution, limiting indebtedness of municipalities to four per cent of the assessed valuation as shown by the last preceding assessment for state and county taxes.

It is admitted that the existing indebtedness of the City of Albuquerque is now in excess of the four per cent limit of the Constitution.

We are confronted with the argument that the contract and deed to be executed by the city in carrying out its terms is a bona fide contract of sale and an unconditional sale, to which is opposed the objection of appellant that the transaction will create a debt in violation of the constitutional limitation of the debt creating power of municipalities already exceeded by the City of Albuquerque.

It clearly appears from the contract that the purpose to be accomplished is the completion of the City Hall, the city finding itself without necessary funds to do so and unable to negotiate a loan for the purpose by reason of the constitutional limitation upon its debt contracting power.

There is no intention to part permanently with the title to the property, but is apparent an intention to secure the defendant bank and those whom the bank may associate with it in the future, for moneys to be advanced by the bank for the completion of the building and subsequent furnishing thereof. It is evident that the moneys, to be advanced by the bank, are to be expended under the

direction of the city and in conformity with plans previously procured by the city.

The payment of rent under the so-called lease is no more than the quarterly payment of interest upon the money to be advanced together with any reimbursement for payments made by the bank on account of taxes or insurance upon the building.

The contract plainly shows that the amount to be advanced was to be repaid by the city as speedily as possible and the answer asserts that "the defendant city will be able to repay to the defendant bank the money provided to be expended by it in the completion of said city hall, in much less time than the ten years' lease and option provided in said contract," all of which tends to show that the transaction is not a bona fide sale of property, but an attempt to mortgage property to secure moneys to be loaned or advanced.

Finally, it is provided that the bank may associate with itself others who might contribute to the fund to be advanced for the completion of the building.

There is not a hint of any past consideration to support the contract or deed of conveyance, and the real intent of the parties is to be found in the allegation of the answer, in which both parties to the contract joins as defendants, where it is set up that the city after diligent effort has been unable to find other ways or means whereby it can complete the city hall, and that the constitution precludes the city from entering into any binding contract for the completion of the city hall.

The intention of the parties was, therefore, to procure the necessary funds for the completion of the city building without violating the constitutional limitation as to debt, and secure the person, or persons, advancing the moneys until repayment thereof which it was thought could be accomplished within a ten-year period.

These being the facts tending to show the intent of the parties, we cannot agree that a bona fide sale of the property is contemplated, but are firmly of the opinion

that the transaction assumes the character of an equitable mortgage.

A deed of conveyance of land, absolute and unconditional on its face, but intended and understood by the parties to be merely a security for the payment of a **4** debt or the performance of some other condition, will be regarded and treated in equity as a mortgage, giving to the parties the relative rights and remedies of mortgagor and mortgagee and nothing more. 29 Cyc. 991. This rule has received the approval of the great majority of our sister states, and is, in our opinion, applicable to the case before us.

In this connection it has been held that where land is conveyed by warranty deed, and as a part of the same transaction the grantee leases the premises to the **5** grantor, with the privilege of redeeming or of purchasing the same during the term for an amount equal to a sum loaned by the grantee to the grantor, the transaction is regarded as a mortgage, especially when it appears that the rent was to be applied in reduction of the debt or to keep down the interest. Hammett vs. White, (Ala.) 29 So. 547; Grand United Order of Odd Fellows' Joint Stock Assn. of Baltimore City vs. Merkin and others (Md.), 5 Atl. 544; Vliet vs. Young, 34 N. J. Eq. 15; Sowles vs. Butler (Vt.), 44 Atl. 355; Ragan vs. Simpson, 27 Wis. 355.

A mortgage, generally speaking, is a conveyance of real estate, or some interest therein, defeasible upon the payment of money or the performance of some other condition. Bayley vs. Bailey, 71 Mass. (5 Gray) 505-509.

It may be urged, as to the case under consideration, that there is no debt by reason of the fact that there is no obligation to pay a sum of money, but simply an option or privilege to purchase without a binding undertaking to pay, necessary to constitute a debt within the meaning of our constitution.

A debt either pre-existing or created at the time, or contracted to be created, is an essential requisite of a mortgage. 1 Jones on Mortgages (6th Ed.) Sec. 265.

As stated by the same author, in the same section:

"The debt may not be evidenced by any bond or note, or covenant to pay it; so that the facts and circumstances of the transaction must be inquired into in order to ascer-. tain whether the consideration of the deed was really a debt or a loan; if not one or the other, the deed can hardly be a mortgage."

Mr. Dillon in his work on Municipal Corporations (5th Ed.), at Sec. 199, has, in our opinion, correctly stated the rule applicable to the facts in this case and we quote at length, with approval:

"Attempts have been made to avoid the effect of the constitutional limitations by borrowing money on the security of property already belonging to the municipality, without giving the lender any recourse against the body corporate, or its property other than the particular property pledged to secure the money advanced. But the courts have held that such transactions create indebtedness within the prohibition of the Constitution, because, although the city is not bound in personam to pay the debt, its property may be taken therefor. The reasoning on which the cases proceed is that the personal obligation of the debtor is not essential to the creation of the debt; the borrowing of the money and its reception contemplate that it shall be repaid, and the mortgaging or pledging of the existing property of the city necessarily implies an indebtedness for which the property of the city pledged or mortgaged is bound, even if the creditor have no general recourse against the city and its funds. If the city purchases water works or other valuable property subject to a mortgage, the amount secured by the mortgagee is indebtedness of the city, even if it do not assume it, or become liable for it in any way. In order to keep the property purchased the city will have to pay the mortgage, and, if the amount due thereon exceeds the limit of the debt which the city is authorized to incur, the purchase is beyond its power and void."

See also, Mayor etc. of Baltimore vs. Gill, 31 Md. 375; Joliet vs. Alexander, 194 Ills. 457; East Moline vs. Pope,

224 Ills. 386; Lobdell vs. Chicago, 227 Ills. 218; Reynolds vs. Waterville, 92 Me. 292.

There is no other conclusion to be arrived at, in considering the facts of the present case, but that property of the City of Albuquerque of the approximate value of thirty-five thousand dollars is pledged, or mortgaged, to secure the repayment of twenty-five thousand dollars to be advanced by the defendant bank for the completion and furnishing of the city hall. Unless the latter sum with interest is repaid the city would lose its property, and, as stated by Mr. Dillon, the borrowing of the money and its reception contemplate that it shall be repaid, and the pledging of the existing property of the city necessarily implies an indebtedness for which the property pledged is bound, even if the creditor have no general recourse against the city and its funds.

It is, therefore, our opinion that the borrowing of money on the security of property already belonging to the municipality, without giving the lender any recourse **6** against the body corporate or its property other than the particular property pledged to secure the money advanced, if the constitutional limitation of municipal indebtedness be thereby exceeded, is the creation of indebtedness within the prohibition of the Constitution.

In so holding we desire to be understood as construing the present case as one not coming under the principle applicable to those cases where current expense of municipal administration is involved, and no payment or liability to be assumed or required until the services or supplies be furnished and then met by annual appropriation and levy of taxes.

For the reasons given, the judgment of the District Court is reversed, and the cause remanded with instructions to proceed in accordance with this opinion, and, it is so ordered.