84 N.J. Super. 77 (1964)
201 A.2d 63
JOSEPHINE SCHNEIDER AND LEONORE VONDERVOR, PLAINTIFFS-APPELLANTS,
v.
TOWN OF WEST NEW YORK, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1964.
Decided May 27, 1964.
*78 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Melvin Gittleman argued the cause for the appellants (Messrs. Capone & Gittleman, attorneys).
Mr. Meyer Pesin argued the cause for the respondents Westower Corporation and the Teachers Insurance & Annuity Association of America.
Mr. Samuel L. Hirschberg argued the cause for the respondents Town of West New York and Salvatore Venturo (Mr. Samuel Nashel, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiffs describe their action as one "in lieu of prerogative writ * * * and for injunctive relief under the general jurisdiction of the Superior Court. * * *." Their principal demand is that a sale of about an acre of land by West New York to defendant Westower Corporation's predecessor in title, consummated about 3 1/2 years before the filing of the complaint, be set aside.
When the complaint was filed on March 6, 1963 Westower was constructing a multimillion dollar 22-story apartment house on this acre and neighboring land which had been *79 acquired from private owners. Plaintiffs also attacked the building permits under which the construction was going forward (the first of the permits had been issued in 1960) and demanded that further construction be enjoined. Judge Pindar, sitting in the Law Division, granted defendants' motion for summary judgment and plaintiffs appeal.
Plaintiffs contend that the land in question was a park and, as such, R.S. 40:60-27 forbade its sale. R.S. 40:60-27 provides:
"The provisions of section 40:60-26 [the general statute permitting the sale of any lands * * * not needed for public use] * * * shall not apply to the sale of park lands or streets. No municipality shall sell or dispose of any park lands or streets, except in exchange for other lands, contiguous to such park lands or streets, in area equal to or greater than the lands conveyed, and only for the purpose of straightening or rendering symmetrical the boundary or boundaries of said park lands or streets."
Plaintiffs do not charge fraud or bad faith. The town was intent upon ratables, and the buyers believed they had the right to build.
Judge Pindar held that, although West New York had acquired the land ostensibly with the intention of establishing a park, the municipality had never taken any steps to carry out that intent, and therefore the land was not "park land" and section 27 did not apply. Plaintiffs challenge this holding.
Defendants argue, with ample justification, that West New York never really intended to make a park of this acre. They point out, and it is admitted, that the land was acquired in 1941 to prevent Eastern Boulevard Corporation, the then owner, from building a small apartment house on it. In 1938 West New York had passed an ordinance to prevent that construction but, after three years of litigation, the ordinance was declared invalid. Eastern Boulevard Corp. v. Willaredt, 123 N.J.L. 269 (E. & A. 1939), 125 N.J.L. 173 (Sup. Ct. 1940), affirmed 125 N.J.L. 511 (E. & A. 1941).
*80 Immediately after the last-cited decision, West New York adopted an ordinance to acquire the acre "by purchase or condemnation" for the establishment of a park. (Parenthetically, the large home of the then mayor of West New York was next door to the acre in question. The mayor died, Westower's predecessors acquired his property and tore down the home to make way for the present construction, which covers both parcels.)
West New York was unable to purchase the acre from Eastern Boulevard Corporation, so it proceeded with condemnation. The judgment in condemnation was entered November 13, 1941, for $14,500. On December 9, 1941 West New York adopted an ordinance "for the issuance of bonds and bond anticipation notes" to pay for the land, and on May 5, 1942 the judgment was paid.
John E. Otis, a lifelong resident of West New York and a member of its board of commissioners and Director of the Department of Parks and Public Property since 1943, deposed that he was thoroughly familiar with the acre because it was within his jurisdiction and a short distance from his home; that "from the date that the Town acquired this property right down to the present date this land was never established or used for park purposes and that the property was in the same condition when I assumed the Directorship of the Department of Parks and Public Property in 1943, as it was before and at the time of the acquisition of the property by the Town, nor was this property ever used as a park at any time prior to the date of the acquisition of the property." He swore further "that this property was never improved as a park, for a park, never used as a park, public or otherwise, never designated for park purposes or established as such. There was not a single piece of equipment, usually employed and used in the maintenance of a park, that was placed or installed on this land. There were never any walks, trees, flowers, monuments or benches placed on this property, nor was this land laid out, improved, embellished and maintained as a public park for public resort and recreation."
*81 There were other affidavits submitted by plaintiffs and defendants, but no useful purpose would be served by reviewing their contents. Suffice it to say that we agree with Judge Pindar's conclusion that they showed the municipality never did anything to apply the land to park use. Judge Pindar rightly held that the affidavits established beyond dispute "that the premises * * * were simply vacant land occasionally used by children as a vacant area, or for other similar inconsequential uses," and were never treated or put to use by the municipality as a park. As another affiant said, this acre remained as it was in 1941, "weeds, wild grass and rocky terrain" (except for the cutting of weeds during the hay fever season), until the acre was sold.
Since the acre was never used as a park or devoted to park use, the question is whether the mere declaration by the municipality that the land was to be acquired for a park, and its condemnation for that avowed purpose, make it nonsaleable under R.S. 40:60-27. We think not.
It seems to us that R.S. 40:60-27 is not intended to forbid the sale of lands acquired for parks or streets which the municipality decides not to use for those purposes before it has done anything to appropriate the lands to such use. Otherwise if, before taking any steps to carry out the purpose for which the land was acquired, the municipality found the street unnecessary or the proposed park site undesirable, the municipality would not be able to dispose of the land. It seems to us that section 27 contains internal evidence that this was not the intention of the Legislature.
The forerunner of sections 26 and 27 was L. 1917, c. 152, § 9, p. 367. That section authorized the sale of all lands "not needed for public use" except "park lands or streets." We think the Legislature did not mean to saddle a municipality with land acquired for a park or a street but never devoted to such purposes. In 1935 (L. 1935, c. 70) the statute was amended to permit a municipality to "dispose of and convey a portion of park lands or streets in exchange for * * * other lands contiguous * * * for the purpose of straightening *82 or rendering symmetrical the boundary or boundaries of said park lands or streets." (Emphasis supplied.) This clearly contemplated lands already laid out as parks or streets. The present section 27 contains almost the same language as L. 1935, c. 70. Cf. Markey v. City of Bayonne, 24 N.J. Super. 105, 113 (App. Div. 1952).
"In most jurisdictions, whether supporting the theory that a municipality does not have the implied power to sell `governmental' property, or adhering to the principle that legislative authority is required for the sale of property devoted or dedicated to the `public use,' it is generally held or recognized that when property of this nature is abandoned or outlives its usefulness, or becomes inadequate for the purposes to which it was devoted, the municipality may sell it without the necessity of specific legislative sanction * * *. It is held in some cases that when `governmental' property or property devoted to `public use' has been abandoned or has become inadequate, the municipality may then sell it under a general statutory grant to it of authority to hold and convey property * * *. Closely akin to the reasoning that a municipality needs no express statutory authority to sell `governmental' property, or land devoted to `public use,' which has become inadequate or has been abandoned, it has been held that a municipality likewise requires no legislative sanction to sell real estate which, although acquired for a governmental or public purpose, was never devoted or dedicated to such public purpose." Annotation, 141 A.L.R. 1447, 1454, 1456-1457 (1942), citing cases.
See also Carson v. State, 240 Iowa 1178, 38 N.W.2d 168 (Sup. Ct. 1949); Southeastern Greyhound Lines, Inc. v. City of Lexington, 299 Ky. 510, 186 S.W.2d 201, 202 (Ct. App. 1945); Lester v. Walker, 177 Ark. 1097, 9 S.W.2d 323 (Sup. Ct. 1928); Palmer v. City of Albuquerque, 19 N.M. 285, 142 P. 929, 932, L.R.A. 1915A, 242 (Sup. Ct. 1914); City of Fort Wayne v. Lake Shore & M.S. Railway Co., 132 Ind. 558, 32 N.E. 215, 217, 18 L.R.A. 367 (Sup. Ct. 1892).
In Palmer v. City of Albuquerque, supra, the court said:
"Generally speaking, property devoted to a public use cannot be sold or leased without special statutory authority, although property which has ceased to be used, or is not used by the public may be sold or leased as the public welfare may demand. 3 McQuillen, Munic. Corporations § 1141 * * *.
* * * while municipal corporations cannot dispose of property of a public nature in violation of the trusts upon which it is held, there *83 is a distinction between property purchased for a public use, and not yet dedicated, and property which is purchased for that purpose, and actually dedicated to that use. We use the term `dedicated' in the sense, defined by Webster, devoted to a use; appropriated; given wholly to. In this sense of the word, municipal property is not impressed with a public trust until it has been given over, appropriated, or devoted to a public use."
In Southeastern Greyhound Lines v. City of Lexington, supra, the court said:
"The question presented for our determination is: Whether a city may sell to a private citizen real estate acquired by condemnation as a site for a city auditorium, upon a showing that the city had been required to abandon its original purpose because of a lack of funds to carry out the purpose, and a refusal on the part of the voters to approve a bond issue by which the necessary funds were proposed to have been raised."
The court answered the question in the affirmative, saying:
"* * * there is a distinction between property acquired for a public purpose and not dedicated to that use, and property purchased for the purpose and actually dedicated to the use. Where the property has been purchased or condemned for a public purpose, and has not been dedicated to such use, the city may sell it, provided, in the case of purchase, there is no limitation on the power contained in the deed. * * *."
Plaintiffs argue that West New York should at least have "vacated" the "dedication" which arose from the town's declaration that it intended to make the acre into a park. The designation of lands as a park may be vacated. N.J.S.A. 40:67-1; 40:60-32; 40:67-19; 40:49-6; cf. Pyatt v. Mayor and Council of Borough of Dunellen, 9 N.J. 548 (1952); N.J.S.A. 40:184-27, 28; 40:60-38; 40:60-36.1-36.4. But if that is all that is missing to give the sale perfect validity, plaintiffs are barred by their laches from raising this omission. Gruber v. Mayor, etc., of Raritan Tp., 39 N.J. 1 (1962); Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955). Cf. Tremarco Corporation v. Garzio, 32 N.J. 448 (1960); Thornton v. Village of *84 Ridgewood, 17 N.J. 499, 511 (1955); Auciello v. Stauffer, 58 N.J. Super. 522, 529 (App. Div. 1959); Newark v. Pennsylvania R. Co., 86 N.J.L. 575 (E. & A. 1914). N.J.S. 2A:14-11, 12.
[The court here reviewed the facts establishing "inexcusable laches" barring plaintiff from complaining of the sale.]
Plaintiffs complain also because one of the conditions of the sale of the land was that the grantee would build a building of not less than 200 dwelling units, to be commenced within one year from the date of the deed, and the town granted extensions of time to construct the building and subordinated its right of reverter to the mortgage. Also, plaintiffs complain because West New York agreed to a revision of the plans to 191 apartments rather than 200. We find these complaints also barred by laches and, moreover, without merit. See Oldfield v. Stoeco Homes, Inc., 26 N.J. 246 (1958). In addition, the subordination of the right of reverter is now academic because the apartment house is approaching completion.
We have examined plaintiffs' other arguments and find them to be without sufficient substance to warrant extended discussion.
The judgment is affirmed.