**NEW STANLEY ASSOCIATES, L.L.L.P., a Colorado limited liability partnership; Allan Renner, resident of the town of Estes Park, Larimer County, Colorado; and Charles B. Hall, resident of the town of Estes Park, Larimer County, Colorado, Plaintiffs–Appellants,**

v.

**TOWN OF ESTES PARK, Colorado municipal corporation; Lot 4Ed, LLC, a Colorado limited liability company; and Estes Winds, LLC, a Colorado limited liability company, Defendants–Appellees.**

No. 07CA1819.

Colorado Court of Appeals, Div. I.

Dec. 11, 2008.

§ 24–51–1105, C.R.S.2008.

Jacobs, Chase, Frick, Kleinkopf & Kelley, LLC, Elizabeth L. Harris, Mark D. Sullivan, Denver, Colorado, for Plaintiffs–Appellants.

No Appearance for Defendants–Appellees.

Opinion by Judge MÁRQUEZ.*

Plaintiffs, New Stanley Associates, L.L.L.P., Allan Renner and Charles B. Hall, appeal the trial court's judgment ruling that defendant Town of Estes Park did not violate statutory requirements when it contracted for the sale of certain property (Lot 4) to defendants Estes Winds, LLC, and Lot 4Ed, LLC. We affirm. .

## I. Background

According to the trial court's findings, Renner and Hall are residents and registered voters within the Town, and New Stanley Associates owns real property within the Town.

In 1997, the former owner of Lot 4 and the Town entered into a Lease/Option to Purchase Agreement for the lot. That agreement provided that during the lease period Lot 4 would be used "for a municipal center, and/or any other use permitted by the Development Agreement dated January 17, 1994." The Town acquired the lease and option to purchase after another entity had expressed an interest in purchasing the existing Town Hall building, but that entity soon withdrew its interest.

The Town continued to appropriate funds and apply them to the periodic lease payments required under the agreement until it exercised the option to purchase the property in December 2004. Two mayors of the Town confirmed that Lot 4 was held for future potential public use.

Between 1999 and 2004, the Town considered various options for using Lot 4, including construction of a parking facility, relocation of the post office facility, and relocation of the police facility. No action was taken with respect to these proposals.

In 2004, the Town set up a "theater goal team" to study the feasibility of establishing a performing arts facility or theater within the Town. The team identified a site for the facility and recommended that the Town sell Lot 4 and use the proceeds for infrastructure improvements to the site.

In 2005, the Town concluded that no further potential public use could be made of Lot 4 and solicited proposals for its development and sale.

In February 2006, the Town approved a contract to sell Lot 4 to Estes Winds and Lot 4Ed, LLC, and the mayor signed the contract on behalf of the Town. By ordinance, the Town later approved, ratified, and amended the sales contract.

Plaintiffs filed this action for declaratory and injunctive relief contending that the Town violated section 31–15–713, C.R.S.2008, which states that the question of the sale of any property used or held for any governmental purpose must be submitted for election prior to any sale. Plaintiffs sought both a declaration that the Town's actions violated the statute and an order voiding the Town's specific actions and requiring the Town to hold an election on whether Lot 4 should be sold.

Following a bench trial, the trial court held that the Town did not use or hold Lot 4 for any governmental purpose and that no election was required for approval of its sale. However, the court also held that the retroactive approval by ordinance was invalid and ordered the Town to void the sale contract. Plaintiffs appeal only the ruling that the Town was not required to hold an election regarding the sale of Lot 4.

## II. Standard of Review

■ Statutory interpretation is a question of law that we review de novo. *Mishkin v. Young*, 107 P.3d 393, 396 (Colo.2005). When the statutory language is unambigu-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

ous, we give effect to the plain and ordinary meaning of the statute without resorting to other rules of statutory construction. *Stamp v. Vail Corp.*, 172 P.3d 437, 442–43 (Colo. 2007).

When interpreting a statute, "[w]e read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *Klinger v. Adams County School Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). A statutory scheme must be read and construed in context to give consistent, harmonious, and sensible effect to all its parts. *See Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

We **must** accept a trial court's findings of historical fact if they are supported by the record. *See Chapman v. Willey*, 134 P.3d 568, 569 (Colo.App.2006).

## III. Discussion

Plaintiffs contend that the purposes for which the Town held Lot 4 constituted a "governmental purpose." We conclude that the Town's original plan for Lot 4, which ultimately lapsed, and its subsequent consideration of other potential public uses for the lot, did not cause the Town to hold the property for a governmental purpose pursuant to section 31–15–713.

Section 31–15–713 states in relevant part:
(1) The governing body of each municipality has the power:
(a) To sell and dispose of waterworks, ditches, gasworks, geothermal systems, solar systems, electric light works, or other public utilities, public buildings, real property used or held for park purposes, *or any other real property used or held for any governmental purpose.* Before any such sale is made, the question of said sale and the terms and consideration thereof shall be submitted at a regular or special election and approved in the manner provided for authorization of bonded indebtedness by section 31–15–302(1)(d).
To sell and dispose of, *by ordinance, any other real estate,* including land acquired from the federal government, owned by the municipality upon such terms and conditions as the governing body may determine at a regular or special meeting.

(Emphasis added.)

### A. Original Plan

We agree with the trial court that although the Town "held" Lot 4 continuously from 1997 through the date of the trial, it did not use or hold it for any governmental purpose. The trial court ruled that subsections (1)(a) and (b) of section 31–15–713 demonstrate a legislative intent to distinguish between property held or used for any governmental purpose, the sale of which must be approved by election, and "any other real estate," which may be sold by ordinance.

The trial court found, with record support, that although the Town entered into the lease and option agreement in the context of relocating the Town Hall to Lot 4, the contingencies for construction failed to materialize when the other entity withdrew its interest. Therefore, the trial court concluded that the applicable statutory provision was subsection (b), which applies to "any other real estate," and not subsection (a), which applies to property held for "any governmental purpose."

We conclude that by enacting the two subsections, the General Assembly provided that not all property **owned by a municipality** is held or used for governmental purposes. In fact, the property here was never used for a town hall because the other entity did not acquire the existing town hall facility.

Courts in other jurisdictions have applied an analysis similar to that used by the trial court here in addressing property that has been purchased for public use, but which has never in fact been so employed. In *Schneider v. Town of West New York*, 84 N.J.Super. 77, 201 A.2d 63 (1964), the plaintiffs sought to set aside the city's sale of land on the ground that the land was park land and prohibited from sale by statute. The court allowed the sale because the city had never put the land to park use and its mere declaration that the land was acquired for park purposes was not enough to make the land unsalable under the statute. The court held that the city was free to dispose of the land if it decided not to

use it for its intended purpose before it had done anything to appropriate the land to such use.

We find the reasoning in *Schneider* persuasive and equally applicable in the similar context present here. *See Southeastern Greyhound Lines v. City of Lexington*, 299 Ky. 510, 186 S.W.2d 201, 202 (1945)("[T]here is a distinction between property acquired for a public purpose and not dedicated to that use, and property purchased for the purpose and actually dedicated to the use. Where the property has been purchased or condemned for a public purpose, and has not been dedicated to such use, the city may sell it ...."); *see also* 10 E. McQuillin, *The Law of Municipal Corporations* § 28.38.20 (rev.3d ed.1990)(property which is not appropriated or devoted to a public use, which has ceased to be used or is not used by the public, or which is in excess of public need may be disposed of by a city without special statutory authorization).

We therefore agree with the trial court that the Town did not use or hold Lot 4 for "any governmental purpose."

### B.  Potential Plans for Lot 4

■ **Similarly,** we also agree with the trial court that "consideration of potential uses [for Lot 4], without any dedication to a particular use" is not a governmental purpose.

Here, the Town briefly considered using Lot 4 for a parking facility, post office facility, or police facility. However, no further action was taken on these proposals, and the Town ultimately decided that Lot 4 had no potential use and should therefore be sold.

### C.  Sale and Use of Sale Proceeds

■ Plaintiffs contend that the Town's retention of Lot 4 for the purpose of using its sale proceeds for the construction of infrastructure for the performing arts center site is itself a "governmental purpose." We disagree.

The relevant statutory provisions address the use or purpose for which the real estate is held, not the use or purpose of the proceeds from its sale.

Other jurisdictions have found that the government acts as a proprietor and not in its governmental capacity when it holds lands for the purpose of sale or disposition. *See, e.g., Lewis v. Village of Lyons*, 54 A.D.2d 488, 490–91, 389 N.Y.S.2d 674, 676 (1976)("There is a well-recognized distinction between lands held by the State as sovereign in trust for the public and lands held as proprietor only, for the purpose of 'sale or other disposition'[;] such lands only as the State holds as a proprietor may be lost to the State; it cannot lose such lands as it holds for the public, in trust for a public purpose, as highways, public streams, canals, public fair grounds."); *see also J.B. McCrary Co. v. Town of Winnfield*, 40 F.Supp. 427, 433 (W.D.La.1941)(corporate acts performed by a municipal corporation include those which have relation to management of corporate or private concerns of the municipality, and from which it derives special or immediate profit or advantage as a corporation, including management of property for private gain or engaging in any profit-making enterprise, and "the fact that profit or advantage inures ultimately to benefit of public does not render enterprise a 'public function'"); **cf.** *Denver v. Qwest Corp.*, 18 P.3d 748, 761 (Colo.2001) **(recognizing that although the governmental/proprietary distinction is often difficult to draw and has been abandoned in various contexts, a public entity may own property in a proprietary capacity).**

### D.  Section 31–15–302, C.R.S.2008

■ Nor do we agree with plaintiffs' contention that the appropriation of public funds for the acquisition of Lot 4 compels a conclusion that Lot 4 was held for a governmental purpose.

Plaintiffs rely on section 31–15–302, which provides in pertinent part:

(1) The governing bodies in municipalities shall have the following general powers in relation to the finances of the municipality:

(a) To control the finances and property of the corporation;

(b) To appropriate money for *municipal purposes only* and provide for payment of debts and expenses of the municipality. . . . (Emphasis added.)

Plaintiffs contend that because the legislative authority granted to governing bodies in municipalities for the appropriation of money is limited to "municipal purposes only," appropriation for the acquisition of Lot 4 was necessarily a "municipal purpose" which is equivalent to "governmental purpose." We are not persuaded.

We need not decide whether "municipal purpose" is synonymous with "governmental purpose" within the facts of this case. As discussed above, the General Assembly has recognized two types of real property, and the distinction is not based on the method of appropriation of funds for the property. Because the position advocated by plaintiffs— that "any property acquired with appropriated municipal funds was automatically rendered 'governmental' "—would render the two subsections of section 31–15–713 meaningless, this argument fails.

Judgment affirmed.

Judge LICHTENSTEIN and Judge RICHMAN concur.