591 P.2d 688

**James McFARLAND, Plaintiff-Appellant,**

v.

**Lamar J. HELQUIST,
Defendant-Appellee.**

**No. 3430.**

Court of Appeals of New Mexico.

Feb. 6, 1979.

Gordon J. McCulloch, LeRoi Farlow, P. A., Albuquerque, for plaintiff-appellant.

John A. Klecan and James T. Roach, Klecan & Roach, P. A., Albuquerque, for defendant-appellee.

OPINION

WALTERS, Judge.

Plaintiff McFarland appeals from the order of the District Court granting defendant's motion for summary judgment. We affirm.

Since it is not clear upon what ground the summary judgment was based, appellant argues three grounds for reversal: that there are genuine issues of fact regarding (1) the negligence of defendant, (2) the contributory negligence of plaintiff, and (3) the proximate cause of the accident.

■ McFarland correctly states the proper standard for granting summary judgment: The moving party must show that there is no genuine issue as to any material fact. Once the movant has made a prima facie showing that he is entitled to summary judgment, the opposing party has the burden of demonstrating the existence of a genuine factual issue. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). Summary judgment is a drastic remedy, and it should be used only with great caution and should not be resorted to as a substitute for trial of the issues. *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 568 P.2d 589 (1977).

The following facts are not disputed: McFarland (plaintiff) was traveling east on U.S. 550 between Farmington and Aztec in the northerly lane of two eastbound lanes, driving about 55 miles per hour. The area was flat and the road was straight. Visibility was unimpaired. At about the same time and place or shortly before, Helquist (defendant) and his wife left a cemetery located off to the south of the highway. They had parked their car off the highway on the south shoulder while they attended a funeral. Helquist drove across the south lane into the left, or north, eastbound lane, and started a U-turn to the left through a break in the median, to return to Farmington. As he was starting his turn, he was rear-ended by McFarland.

After the accident Helquist returned and measured the distance from the point where he had been parked at the cemetery to the point of impact at 450 feet. McFarland estimated the distance from where he had observed parked cars on the south shoulder at the cemetery to the point where the accident occurred at approximately 160–200 feet.

In his deposition, McFarland said he was driving along U.S. 550 and noticed mourners coming to their cars from the cemetery, and he became particularly attentive to the possibility that children might be present who would dart into the highway.

There are facts which would support a jury's finding that Helquist was negligent. He testified on deposition that at some point before he made his U-turn, he got into the northernmost eastbound lane, but he did not remember looking into his rearview mirror at any time prior to the impact. He didn't remember whether he looked to see if any cars were coming from the west before he pulled onto the eastbound lanes of the highway; he didn't know how fast he was traveling; he didn't know whether or not he had engaged his left turn signal as he slowed to make the turn; he did not see McFarland's car until he was hit by it.

By the same token, the facts also indicate McFarland's contributory negligence. He was looking toward the south side of the highway as he approached and passed the cemetery west of the point of impact; he did not see Helquist pull onto the highway and he did not see Helquist in front of him until he was directly upon him. At that time Helquist was in the north lane and turned at a northerly angle "like he was fixing to go through the median," and McFarland was 10–25 feet from him. He couldn't remember if either brake or turn signals were operating on the Helquist vehicle.

McFarland argues that he is entitled to the inference that Helquist pulled across the highway directly in front of him; and that Helquist's own deposition testimony reflects that he was not keeping a proper lookout. Plaintiff also argues that reasonable men would differ on the issue of his own contributory negligence, because he was traveling within the speed limit and had only momentarily diverted his gaze to the south before he looked back and saw defendant's car immediately ahead of him. Coupling these facts with defendant's admission that he moved from the south shoulder to the north eastbound lane within

**559**

a 160- to 450-foot distance, he contends a jury could reasonably infer that he, McFarland, was suddenly confronted with defendant's automobile in front of him—presumably confronted with the circumstances of an unavoidable accident.

The argument is intriguing—as far as it goes. It overlooks, however, that even if we give plaintiff the benefit of every reasonable inference of defendant's negligence and plaintiff's confrontation with sudden danger, there is nothing in the record to overcome the fact that plaintiff did not see what immutably was in front of him. Helquist's car might have crossed over immediately before the impact, but why did plaintiff not see it, or why did he not move to the outside lane to avoid it? If, within a 160- to 450-foot span a car crosses from right to left on a flat, clear road sufficiently ahead of another on its left to wind up directly in front of the second car, the driver of the second car *must* see the vehicle moving diagonally across and ahead of him unless his eyes are completely off the road for longer than a reasonable time. Plaintiff did not see defendant's car at all until he was within 15–25 feet of it. Helquist's car might have been in its slightly-turned position for some time before impact if plaintiff did not see it cross from right shoulder to left median ahead of him; but if that is so, why did not plaintiff see, long before he did, what obviously he should have seen if he had been keeping a proper lookout? If Helquist's car crossed over to the median cut-off long enough before McFarland reached the cemetery area to explain why McFarland did not see it crossing over, then McFarland should have seen what was there to be seen had he been keeping a proper lookout. *New Mexico State Highway Dept. v. Van Dyke,* 90 N.M. 357, 563 P.2d 1150 (1977); U.J.I. 9.3. There are absolutely no inferences which may be drawn from the depositions presented to the trial judge to excuse McFarland from seeing the only two possible explanations of Helquist's presence on the highway at the point of impact. *Selgado v. Commercial Warehouse Co.,* 86 N.M. 633, 526 P.2d 430 (Ct.App.1974). "An inference is not a sup-

position or a conjecture, but is a logical deduction from facts proved * * * and guess work is not a substitute therefor." *Stambaugh v. Hayes,* 44 N.M. 443, 103 P.2d 640 (1940).

McFarland did not excuse himself. He said only that he did not see where Helquist had come from; he didn't see the car at all until he was so close that he was unable to avoid hitting it. According to the depositions of both parties, there was no other traffic on the road; there were no obstructions, no hills, no curves; it was daylight; the weather was clear and dry. Obviously plaintiff was contributorily negligent in failing to see what he should have seen, and reasonable minds cannot differ on that issue. It was a proper legal question to be resolved by the judge. *New Mexico State Highway Dept. v. Van Dyke, supra.*

Plaintiff finally argues that a jury (not a judge) should have determined whether his own negligence, if any, was the proximate cause of the accident. In *Silva v. Waldie,* 42 N.M. 514, 82 P.2d 282 (1938), the Supreme Court adopted the rules stated in §§ 463 and 465 of the Restatement of the Law of Torts, and declared that plaintiff's contributory negligence must have contributed substantially to his injuries in order to be considered a proximate cause. That rule was repeated in *Stephens v. Dulaney,* 78 N.M. 53, 428 P.2d 27 (1967). Certainly plaintiff's inattention—his failure to exercise reasonable care for his own safety—was a substantial contributing factor to the accident which occurred. *See Martinez v. City of Albuquerque,* 84 N.M. 189, 500 P.2d 1312 (Ct.App.1972). The record does not substantiate an inference that defendant's negligence was the sole cause, or even a contributing cause, to the collision.

There were no material issues of fact surrounding plaintiff's negligence and its contributing proximate cause to the accident to present to a jury. Consequently, the trial court correctly granted summary judgment, and that judgment is affirmed.

IT IS SO ORDERED.

SUTIN, J., dissenting.

ANDREWS, J., concurring.

SUTIN, Judge (dissenting).

The only question to resolve is whether plaintiff, McFarland, was contributively negligent as a matter of law.

McFarland was travelling east out of Farmington on Highway 550. The accident occurred one tenth of a mile east of the Farmington city limits and at the east end of a cemetery that fronts on the southern lane of the eastbound highway. There were two lanes in each direction divided by a medial area. We are concerned only with the two southern lanes of traffic moving eastward.

As McFarland approached the west end of the cemetery area, he was driving in the north lane at 55 mph which estimates at 75 feet per second. He looked to his right and saw six to eight cars parked off the south side of the highway, and 30 to 40 people, including children, walking out of the cemetery toward the highway. While driving along, he looked to the right and ahead to make sure no person, including children would run out in front of him. In fact, he was watching both sides of the highway and the area in front of him. The cemetery fronted on the highway about 160 to 200 feet.

Defendant, Helquist, drove so fast into McFarland's lane of travel while McFarland's eyes were focused at a different point that McFarland did not see the Helquist car until he looked directly ahead. A time period of two to three seconds elapsed between the time he might have seen the Helquist car and the time of the accident. The Helquist car was between 10 and 25 feet directly in front of him. It was turned slightly north as though Helquist was preparing to go through the median into the westbound lanes back toward Farmington. McFarland braced himself and his car struck the Helquist car.

We are not confronted with a situation in which McFarland was looking ahead and had a duty to see that which was in plain sight. Under the circumstances of this case, McFarland's attention to traffic ahead was momentarily diverted by the activity surrounding a funeral departure by a host of people. Whether McFarland was contributively negligent is a question of fact for the jury.

It is hornbook law that the operator of a vehicle has a duty to keep a proper lookout and see what is in plain sight. UJI 9.3. To justify his failure to see a vehicle, the driver must offer evidence of justification. *New Mexico State Highway Dept. v. Van Dyke,* 90 N.M. 357, 563 P.2d 1150 (1977). Once a reason is given, its reasonableness is for the jury. *Selgado v. Commercial Warehouse Company,* 86 N.M. 633, 526 P.2d 430 (Ct.App.1974).

The driver of a vehicle has a duty to keep a reasonably continuous lookout, but not a constant lookout in one direction or constantly to have his eyes on the road ahead. *Crocker v. Johnston,* 43 N.M. 469, 95 P.2d 214 (1939). He is not required to refrain from directing his attention to reasonably anticipatable dangers which may emanate from sources other than the roadway ahead. *Burnett v. Marchand,* 186 So.2d 383 (La. App.1966). As a matter of fact, the driver has a right to assume that any person entering into the highway would do so with due care and caution. *Beaucage v. Russell,* 127 Vt. 58, 238 A.2d 631 (1968).

Plaintiff's contributive negligence is a genuine issue of material fact.