740 P.2d 699

**SUNWEST BANK OF CLOVIS, N.A., as Trustee under a Mortgage and Indenture of Trust dated as of December 1, 1982, from the City of Clovis to said bank, Plaintiff-Appellee,**

v.

**CLOVIS IV, a Missouri general partnership, et al., Defendants-Appellants.**

**SUNWEST BANK OF CLOVIS, N.A., Plaintiff-Appellee,**

v.

**NEW MEXICO ETHANOL PRODUCERS 1983 A. LTD., a Texas Limited Partnership, et al., Defendants-Appellants.**

**SUNWEST BANK OF CLOVIS, N.A., Plaintiff-Appellee,**

v.

**CLOVIS II, a Missouri general partnership, et al., Defendants-Appellants.**

**SUNWEST BANK OF CLOVIS, N.A., Plaintiff-Appellee,**

v.

**CLOVIS III, a Missouri general partnership, et al., Defendants-Appellants.**

Nos. 16707, 16708, 16710 and 16753.

Supreme Court of New Mexico.

July 29, 1987.

Rehearing Denied Aug. 19, 1987.

Doerr & Knudson, Randy Knudson, Clovis, for defendants-appellants.

Modrall, Sperling, Roehl, Harris & Sisk, Paul M. Fish, Mark B. Thompson, III, Albuquerque, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

This controversy arises out of a default by ethanol plant developers under an industrial revenue bond issue. In separate actions consolidated on appeal, Sunwest Bank of Clovis (Sunwest Bank), as trustee for the City of Clovis (City), brought a declaratory judgment action against Titan Energy Engineering, Inc. (Titan), and against Clovis II, Clovis III, Clovis IV and New Mexico Ethanol Producers (partnerships) seeking a declaration that the lease and development agreement (lease) between the City

and the original developer was terminated due to default in payments. Titan was the original developer of the property and the partnerships are its successors in interest. At issue is whether the partnerships may be declared to have no further right to possession nor any right of repurchase of the property by reason of the default. The original complaints also sought past due rentals and accelerated future payments; however, these claims have not been litigated and are not part of this appeal.

Pursuant to the Industrial Revenue Bond Act (the Act), NMSA 1978, Sections 3–32–1 to 3–32–16 (Repl.Pamp.1984), the City took title to land from the developer, Titan. *See* NMSA 1978, § 3–32–6(A). At the same time, the City leased the property back to Titan and issued industrial revenue bonds in order to finance several plants to be constructed on this land for the manufacture and processing of ethanol (the projects). Concurrently with the issuance of the bonds, the City conveyed and assigned its rights as landowner and lessor to Sunwest Bank. The promise of the City to pay the principal and interest due to the bondholders was secured by a pledge to the trustee of the revenues from the projects and a mortgage and security interest on all of the properties of the projects, both real and personal. *See* NMSA 1978, § 3–32–8. The proceeds from the sale of the bonds went to Sunwest Bank which, as trustee, disbursed the funds to Titan for the construction and installation of the projects. Titan's lease payments were made to Sunwest Bank for payment of principal and interest to the bondholders. *See* NMSA 1978, § 3–32–7.

The lease provided Titan with an option to purchase the properties, conditioned upon completion of the projects by Titan. *See* NMSA 1978, § 3–32–9. The lease further provided that the lessee, Titan, would construct the projects and enter into all necessary contracts. Pursuant to separate sale agreements, permissible under the lease, Titan sold to each partnership its right to possession and use of the projects. However, Titan could not relieve itself of its obligations under the lease by either sale, sublease or assignment of a project.

Titan continued to be liable for the lease payments.

The sale agreements provided that the rights of each partnership were subordinate to the rights of the City and Sunwest Bank, so long as the bonds remained outstanding. Titan assigned to Sunwest Bank its right to receive payment from the partnerships under each sale agreement, to be exercised in the event of a default by Titan under the lease. In addition, the sale agreements specifically recognized that title to the projects remained in the City while the bonds were outstanding, subject to the right of Titan to purchase the projects.

The failure of Titan to make lease payments triggered the right of Sunwest Bank to receive payments directly from the partnerships. The partnerships likewise failed to make payment and demand was made on each partnership pursuant to the lease and sale agreements. The partnerships made no effort to cure the defaults and this action was brought by Sunwest Bank, on behalf of the bondholders. Default judgment was entered against Titan in each of the respective actions declaring the lease terminated. In the other suits, the district court granted Sunwest Bank's motions for partial summary judgment which declared that the lease was terminated with respect to the partnerships and that Sunwest Bank was entitled to legal and physical possession of the property. The partnerships appeal the entry of partial summary judgment and maintain that the district court abused its discretion in granting the declaratory relief. We affirm.

The partnerships claim that the district court should not have granted the partial summary judgments for declaratory relief because that was, in effect, an inequitable summary forfeiture of their interests in the projects. The partnerships contend that the equities weigh heavily in their favor and that the district court erred in failing to find that the following material issues of fact existed:

1. Whether the partnerships obtained equitable mortgages from the City in

the land on which each project was situated;

2. Whether there was no default by reason of the payments made to Titan by the partnerships; or, whether the down payment made by the partnerships prevents a forfeiture of their interests;

3. Whether Sunwest Bank breached the contract or fiduciary duties to the partnerships and caused the default.

## Equitable Mortgage

The partnerships submit that the original conveyance and leaseback with right of purchase constituted an equitable mortgage with rights of redemption, and that, when asked to decide the equitable mortgage issue, it was inappropriate for the district court to enter summary judgment. The partnerships cite *Wyoming Discount Corp. v. Lamar*, 444 P.2d 620 (Wyo.1968), and *Martinez v. Logsdon*, 104 N.M. 479, 723 P.2d 248 (1986). The partnerships contend that the original conveyance of real estate by Titan to the City with a simultaneous leaseback is a classic example of the grant of an equitable ownership interest. They cite *Palmer v. City of Albuquerque*, 19 N.M. 285, 142 P. 929 (1914), *Boardman v. Kendrick*, 59 N.M. 167, 280 P.2d 1053 (1955), and *Blumenthal v. Concrete Construction Co. of Albuquerque*, 102 N.M. 125, 692 P.2d 50 (Ct.App.1984). They also cite 59 C.J.S. *Mortgages* § 21 (1949). The partnerships argue that, at the least, a factual issue existed concerning the manner in which the City acquired the project from Titan. They rely upon *Stevens v. Edwards*, 112 F.2d 534 (5th Cir.), *cert. denied*, 311 U.S. 678, 61 S.Ct. 45, 85 L.Ed. 437 (1940). They also cite 59 C.J.S. *Mortgages* § 56 (1949).

The partnerships submit that the *Palmer* court critically analyzed the parties' intentions in determining whether an equitable mortgage in fact existed. The determination of the parties' intent has been deemed a question of fact. *Robinson v. Durston*, 83 Nev. 337, 432 P.2d 75 (1967). Moreover, the *Robinson* court noted that the issue of intent cannot properly be decided in a summary proceeding. The partnerships submit that rules of statutory construction dictate that the rule of *Palmer* remains unaffected by the Act absent an express statement by the legislature to the contrary. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983) (presumption that legislature did not intend to enact law that was inconsistent with existing law); *Patterson v. Globe Am. Casualty Co.*, 101 N.M. 541, 685 P.2d 396 (Ct.App. 1984) (presumption extends not only to statutory law but to the common law); *State v. Tomlinson*, 98 N.M. 337, 648 P.2d 795 (Ct.App.1982) (presumption also extends to judicial pronouncements). In conclusion, the partnerships submit that any rights of Sunwest Bank against the partnerships are through foreclosure actions and not summary judgment.

We do not agree that the rule in *Palmer* has been derogated by the district court's action. In *Palmer*, the City initially owned the land and, after being unable to complete a new city hall structure due to a depletion of construction funds, conveyed the land along with improvements to the bank. The bank, in turn, leased the property back to the City with a right to repurchase. The payment of rent by the City amounted to the payment of interest, taxes, and insurance on the building. The court found that the intention of the parties was (1) to procure the necessary funds for completion of the city hall without violating the constitutional limitation as to the city's debt, and (2) to secure the bank until repayment could be accomplished. Accordingly, the court concluded that the parties did not intend a bona fide sale of property and characterized the transaction as an equitable mortgage. Unlike *Palmer*, the transactions between the City and Titan were governed by the Act which expressly promotes the concept of the municipality owning the land with a leaseback to the grantor in order to follow the legislative intent and purpose of promoting industry and trade in New Mexico. The City, as landowner, was able to pass along to the lessee several tax benefits, which is consistent with legislative intent to induce in-

dustrial enterprises to locate or expand in New Mexico. *See* NMSA 1978, § 3–32–4.

■ The partnerships presented no evidence to the court that the City and Titan ever intended the transaction to be a loan and a mortgage. The cases relied upon by the partnerships do not hold that intent to create an equitable mortgage can be inferred from the mere fact of a down payment by a lessee who has a right of repurchase. Mere argument or contention of existence of a material issue of fact does not preclude summary judgment. *Turner v. Barnhart*, 83 N.M. 759, 497 P.2d 970 (1972). The party opposing the motion must show that evidence is available which would justify a trial of the issue. *Id.* Accordingly, we find that no genuine issue of material fact existed with regard to the partnerships' claim that an equitable mortgage was created between the City and Titan, the lessee.

*No Default and Inequitable Forfeiture*

■ The partnerships contend that a genuine issue of material fact existed regarding whether a forfeiture should be allowed. They claim that their payments to Titan exceeded the amount of the purported default. However, Titan was not the designated agent to receive payments for the City or Sunwest Bank. Neither the partnerships' argument that they made the down payments to Titan nor their argument that any unfairness would shock the conscience of the court has merit where the monies paid did not go to the trustee, but rather under the sale agreements went directly to Titan. If the partnerships wanted credit for the down payments, they should have bargained for it with the City and Sunwest Bank. Titan bargained for and got the vehicle by which it could receive the monies from the partnerships and walk away without payment to the City. The partnerships did not protect themselves against that risk.

The partnerships' down payments to Titan have no effect on Sunwest Bank's right to a forfeiture caused by the default in payments. It is undisputed that Sunwest Bank did not receive the partnerships' down payments from Titan. Furthermore, the partnerships were given almost two full years in which to cure the default before this action was filed. Thus, the declaratory judgment does not rise to the level of a forfeiture which would shock the conscience of the court.

*Trustee's Alleged Breach of Contract or Fiduciary Duties*

■ The partnerships maintain that a genuine issue of material fact existed regarding whether Sunwest Bank's alleged negligence in allowing mechanics' and materialmen's liens to be placed on the projects was a breach of contract or of its fiduciary duties. It is argued that such a breach may relieve the partnerships from their obligation to perform under the contract. This argument is without merit. Sunwest Bank had no contractual responsibility to the partnerships because the lease specifically placed responsibility on Titan to see that no such liens were filed against the projects. In addition, the partnerships agreed not to allow such liens to be placed against the projects.

With regard to the partnerships' allegation that a genuine issue of material fact existed regarding whether the documentation had by Sunwest Bank for making payments out of the construction fund was bona fide or fraudulent, the partnerships failed to explain why an alleged fraud on Titan's part would allow the partnerships to avoid their responsibilities for payment under the lease and sale agreements. In making its determination, the district court had the affidavit of Sunwest Bank's vice president to which all of the requisitions, signed by a Titan representative, were attached. On their face, the requisitions met the documentation required by the lease. The partnerships did not show otherwise. A conclusory statement on information and belief does not controvert facts in support of summary judgment. *Portales Nat'l Bank v. Bellin*, 98 N.M. 113, 645 P.2d 986 (Ct.App.1982).

The moving party is entitled to summary judgment when the pleadings, depositions and admissions, together with the affidavits, show there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Martin v. Board of Educ.*, 79 N.M. 636, 447 P.2d 516 (1968). Once the movant has made a prima

facie showing that he is entitled to summary judgment, the opposing party has the burden of demonstrating the existence of a genuine fact issue. *McFarland v. Helquist*, 92 N.M. 557, 591 P.2d 688 (Ct.App. 1979). We find that the partnerships failed to meet their burden on all points and the district court properly entered summary judgment.

*Propriety of Declaratory Relief*

The partnerships also submit that, because of the unresolved claims for past due rentals and accelerated future payments, the trial court's decision to grant declaratory relief resulted in piecemeal trial of issues, potential inconsistent relief, and greater expense to the litigants and the courts, thus constituting an abuse of the court's discretion. In an affirmative defense, the partnerships requested that the court not enter declaratory judgment on the grounds that "such judgment * * * would not terminate the uncertainty or controversy giving rise to the proceeding." *See* NMSA 1978, § 44-6-7.

■ The exercise of discretion to grant or refuse declaratory relief under Section 44-6-7 must find its basis in good reason. *See National Liberty Ins. Co. of America v. Silva*, 43 N.M. 283, 289, 92 P.2d 161, 165 (1939). The purpose of the Declaratory Judgment Act (NMSA 1978, Sections 44-6-1 to 44-6-15) is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." NMSA 1978, § 44-6-14. The partnerships cite the court to *McGraw-Edison Co. v. Preformed Line Products, Co.*, 362 F.2d 339 (9th Cir.), *cert. denied*, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966), for the proposition that declaratory relief should not be granted where it would not resolve the entire controversy and would result in a piecemeal trial of a particular issue. It must be noted, however, that *McGraw-Edison* further held that even though multiplicity of litigation is always an important factor, no one factor necessarily controls the court's decision of whether it should entertain an action for declaratory judgment. *Id.* Here, the district court had before it sufficient evidence to clarify the rights and status of the parties with regard to the default and whether the partnerships should have further right to possession or repurchase of the property; and, thus, the court properly entered declaratory judgment on this issue. No piecemeal litigation arises from this result. *Cf. Banquest/First Nat'l Bank of Santa Fe v. LMT, Inc.*, 105 N.M. 583, 734 P.2d 1266 (1987).

It is not inconsistent, based upon the substantial breach of contract, for the court to terminate the legal and equitable interests of the partnerships while Sunwest Bank's claim for damages, amounting to the balance of monies owed under the leases, remained unlitigated. The partnerships had nearly two years in which to cure the default before this action was filed. It is a maxim well known that equity aids the vigilant. Moreover, as a predicate to equitable relief, a party must exercise reasonable efforts to discharge his own obligations. *Bradford v. Alvey & Sons*, 621 P.2d 1240 (Utah 1980); *cf. Davies v. Schiess*, 417 P.2d 19 (Wyo.1966) (purchasers of motel did not indicate a desire to redeem nor offer to pay balance owing and thus abandoned their rights under the contract, and, under equitable principles, it was proper to deny affirmative relief, such as a right to redeem, in absence of a tender or offer to pay the balance admitted to be due).

The trial court may properly grant declaratory and non-declaratory relief in a single action when such relief is requested in the pleadings by the parties. *State ex rel. Bardacke v. New Mexico Fed. Sav. & Loan Ass'n*, 102 N.M. 673, 699 P.2d 604 (1985). We do not pass upon the merits of any claim for damages that may exist following the grant of declaratory relief.

For the reasons stated above, the district court is affirmed in its entirety.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and STOWERS, J., concur.