804 P.2d 1078

**WESTERN BANK OF ALBUQUERQUE, Plaintiff–Appellee,**

v.

**FRANKLIN DEVELOPMENT CORPORATION, a Foreign Corporation, Lee Farkas, and Ruth Pollack, Defendants,**

**and**

**Max Pollack, Defendant–Appellant.**

**No. 18951.**

Supreme Court of New Mexico.

Jan. 28, 1991.

Rehearing Denied Feb. 12, 1991.

Rodey, Dickason, Sloan, Akin & Robb, Henry M. Bohnhoff, Albuquerque, for defendant-appellant.

Civerolo, Hansen & Wolf, R. Thomas Dawe, Kathleen Schaechterle, Albuquerque, for plaintiff-appellee.

## OPINION

FRANCHINI, Justice.

This suit was brought to collect a debt and enforce guaranties. The trial court awarded judgment against defendants Max Pollack and Franklin Development Corporation (Franklin) in the amount of $32,262.42 as of September 19, 1989, with a daily accrual from said date of $8.08 per day. The court also awarded costs and attorney's fees. Pollack appeals from the judgment in favor of Western Bank of Albuquerque (Western). We affirm.

On March 22, 1977, Citizens Bank (Citizens) extended a loan to Franklin in the original amount of $52,000.00. The loan was evidenced by a promissory note executed by Pollack, as president of the corporation, as well as Ina Farkas as secretary. On the same day, and as part of the consideration upon which Citizens issued its loan, Pollack made, executed, and delivered his personal continuing guaranty (Guaranty) of all Franklin's corporate indebtedness to Citizens to the "extent of indebtedness." Codefendant Lee Farkas also signed personal guaranties of the debt. On October 16, 1981, Citizens further loaned Franklin $25,000.00. In October 1984 the outstanding principals of the two loans were consolidated into a renewal note for $39,609.07. As of December 21, 1984, Citizens merged with Western and Western succeeded to Citizens's assets and liabilities, which included Franklin's indebtedness and the personal continuing guaranties of such indebtedness. In January 1987 and again in January 1988, the consolidated loan was renewed and extended. On February 22, 1988, by letter to Franklin and Pollack, Western advised that the renewal note was in default as of October 25, 1987. On March 4, 1988, by letter to Franklin and Pollack, Western made demand for the renewal note to be brought current. On April 14, 1988, Western made demand upon Pollack for the entire unpaid balance of the renewal note. Pollack had actual knowledge of the renewal note and he never revoked his Guaranty prior to the filing of Western's complaint.

This opinion will address the statute of limitations on a demand guaranty. On five separate occasions—in his motion to dismiss; in his motion for summary judgment; at the close of Western's evidence and all evidence; and in his requested findings and conclusions, Pollack asked the trial court to rule that NMSA 1978, Section 37–1–3(A) (Repl.Pamp.1990) barred Western's claim against him. Pollack also challenges the trial court's refusal to adopt several of his requested findings of fact. The trial court must make findings only with regard to ultimate facts—those necessary to determine the issues of the case. *Curbello v. Vaughn,* 78 N.M. 489, 432 P.2d 845 (1967); SCRA 1986, 1–052(B)(1)(b). The refusal by the court to accept a requested finding is regarded on appeal as a finding against the party bearing the burden of proof on the issue at trial. *Pucci Distributing Co. v. Nellos,* 110 N.M. 374, 796 P.2d 595 (1990). Our review of the court's findings and conclusions indicates that adequate findings were made as to ultimate issues, and we hold that there was no error in this regard.

There is no dispute that the applicable statute of limitations is NMSA 1978, Section 37–1–3(A) (Repl.Pamp.1990). In defining the limitation period, the statute states in relevant part:

> Those founded upon any bond, promissory note, bill of exchange or other contract in writing, or upon any judgment of any court not of record, within six years.

The parties disagree, however, on when the limitation period begins to run. First, we examine the triggering of the limitations period on a general guaranty contract.

The general rule stated by the dissent in *Cullender v. Levers,* 38 N.M. 436, 440, 34 P.2d 1089, 1091 (1934), is "the statute of limitations begins to run upon a contract of guaranty the moment a right of action upon the contract accrued, not before." This proposition is strongly supported in other jurisdictions. Thus, in *Production Credit Association of Midlands v. Schmer,* 233 Neb. 749, 448 N.W.2d 123

(1989), the Supreme Court of Nebraska held that the guarantor's liability arises and the statute of limitations begins to run when the principal debtor defaults. Similarly, in *California First Bank v. Braden*, 216 Cal.App.3d 672, 264 Cal.Rptr. 820 (1989), the court held that the statute of limitations for the guarantor commences running upon the breach of the principal—when the note falls due and remains unpaid.

 Pollack argues that because the Guaranty was payable "on demand * * * whether due or not due," it should be construed as a demand "instrument" and therefore, the limitation period should run from the day it is signed. We disagree. The law is well settled with respect to a promise to render performance on demand, that a demand for performance is an express condition precedent to the duty of immediate performance. 3A A. Corbin, *Corbin on Contracts* § 643 (1960) [hereinafter *Corbin*]. It follows from that rule that the statute of limitations does not begin to run until demand has been made. *Id.* A widely recognized exception to the demand rule applies to demand notes or negotiable instruments payable on demand. *Id.* Under the exception, running of the statute of limitations commences upon the execution or delivery of the note. *See* Annotation, *When Statute of Limitations Begins to Run Against Note Payable on Demand*, 71 A.L.R.2d 284 (1960). The exception is justified because the phrase "on demand" is used not to make demand a condition precedent, but to show that a money debt already due and payable exists. *Corbin* § 643. Stated differently, "when a promise is to pay one's own debt on demand, [no demand] is required, because the law implies a promise to pay and the express promise forms no part of the consideration and adds nothing to the obligation." *First Nat'l Bank of Waterloo v. Story*, 200 N.Y. 346, 354–55, 93 N.E. 940, 943 (1911).

 Where, however, the promise is to pay the debt of another "on demand", a different case arises and the presumption does not apply. As *Corbin* points out, the exception applies "only to the promise of a debtor to pay his own debt. It is not applicable against a surety who promises to pay the debt of another 'on demand'." *Corbin* § 643. In *First National Bank of Waterloo*, the New York Court of Appeals reasoned that with respect to a guarantor's promise to guarantee on demand the debt of another, "there is no precedent duty, and the obligation to pay rests wholly on the promise in the form made, and the promise is binding only in the form made." 200 N.Y. at 355, 93 N.E. at 943 (cited in *Corbin* § 643). The court concluded that breach of promise to pay another's debt on demand did not occur until demand was made upon the guarantor. Because no cause of action for breach arises until demand is made upon the guarantor, the statute of limitations does not commence until demand has been made.

Similarly in *United States v. Hanson*, 649 F.Supp. 100 (D.Me.1985), a guaranty provided for prompt payment of a note as and when due, whether by acceleration or otherwise. The court held that the cause of action accrued and the statute of limitations began to run when the small business association accelerated the note and demanded payment by the guarantors. *Id.* at 105.

 We hold that the statute of limitations on a demand guaranty begins to run when demand is made upon the guarantor. In accordance with the foregoing, we affirm the judgment of the trial court.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.