UNITED STATES of America,
Plaintiff–Appellee,

v.

AGRI SERVICES, INC., Defendant–Appellant,

and

Four Way Cattle Co., Inc., Arlene Daniels, Robert L. Odle, Sharon Odle, and Ronald D. Garnett, Defendants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

FOUR WAY CATTLE CO., INC., and Arlene Daniels, Defendants–Appellants,

and

Robert L. Odle, Agri Services, Inc., Sharon Odle, and Ronald D. Garnett, Defendants.

Nos. 94–2078, 94–2083.

United States Court of Appeals, Tenth Circuit.

April 16, 1996.

James G. Whitley, III (Francis J. Mathew with him on the briefs) of Jones, Snead, Wertheim, Rodriguez & Wentworth, P.A., Santa Fe, New Mexico, for Defendants Four Way Cattle Co., Inc. and Arlene Daniels.

Mark L. Ish (Carol J. Ritchie with him on the briefs) of Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Santa Fe, New Mexico, for Defendant Agri Services, Inc.

Manuel Lucero, Assistant U.S. Attorney (John J. Kelly, United States Attorney with him on the brief), Albuquerque, New Mexico, for Plaintiff.

Before SEYMOUR, Chief Judge, SETH,* Circuit Judge, and KANE,** District Judge.

---

* The late Honorable Oliver Seth heard oral argument in this case but did not participate in the final decision.

** The Honorable John L. Kane, Jr., Senior District Judge for the United States District Court for the District of Colorado, sitting by designation.

SEYMOUR, Chief Judge.

The Small Business Administration (SBA) brought this action seeking an *in personam* judgment against the debtor and guarantor on a promissory note. The SBA also sought foreclosure of an equitable mortgage allegedly created by the assignment of a state land contract to secure the promissory note. Defendants appeal from the district court's grant of summary judgment for the SBA. We reverse and remand for further proceedings.

## I.

On October 23, 1961, the State of New Mexico entered into a thirty-year land contract to sell over 6,000 acres of state land. The land is valuable primarily for its underground water rights, which allow the land to be irrigated for farming and grazing. Following a series of assignments, defendant Four Way Cattle Company obtained an interest in 1978 in over 600 acres covered by the contract and assumed a promissory note owed to Hutchinson National Bank and Trust (Hutchinson) which was secured by a collateral assignment of the land contract in favor of Hutchinson. Other parties held interests under the contract as well.

On October 15, 1981, Four Way executed a promissory note in favor of the SBA in the amount of $360,200. Defendant Arlene Daniels signed the note as president of Four Way and also executed a personal guaranty. As security for the note, Four Way executed a security agreement covering farm equipment, and also executed a second collateral assignment of the land contract in favor of the SBA.

Four Way defaulted on the Hutchinson note in July 1984. On August 9, 1984, Hutchinson sent a letter to Four Way exercising its option to accelerate the note by declaring the entire amount due and payable on or before August 20. Hutchinson also sent a copy of this letter to the SBA loan officer handling Four Way's SBA loan. At his request, Hutchinson agreed to extend the time for payment to September 4, to give the SBA the opportunity to consider Four Way's request to borrow money to pay off the Hutchinson note. By this time, Four Way

was also in default on its SBA loan. The SBA ultimately decided to sell the property and use the proceeds to pay the Hutchinson note. Accordingly, it requested that Hutchinson allow it to bring and keep the loan current pending the sale of the property. Apparently this request was denied because the SBA paid off the Hutchinson note in December 1984.

The SBA was actively pursuing a sale of the property during this time. By January 1985, the SBA had obtained a signed purchase agreement under which the buyers would assume the SBA loan and obtain a transfer of the property. The deal, however, did not go through.

In April 1988, the SBA sent identical letters to Four Way and to Arlene Daniels as president of Four Way stating the SBA was accelerating both the SBA note and the Hutchinson note. Nevertheless, the SBA did not then institute a foreclosure action.

In September 1991, the New Mexico Commissioner of Public Lands sent Four Way notice that the land contract would expire by its own terms on October 23, 1991. The unpaid principal balance due on the contract was $203,194.05, and the balance due from Four Way was $21,243.76. The contract was paid off in full, and Four Way then executed a mortgage on the property in favor of defendant Agri Services, Inc., which was recorded in October 1991. The Commissioner sent the SBA written notice in February 1992 that the contract had been paid and that a patent conveying the lands covered by the contract would be issued to Four Way, among others, in March. A patent for the land was in fact issued.

The SBA thereafter filed this action to recover on the note and guaranty, and to foreclose. Defendants asserted that the limitation period had run on the Hutchinson note because it had been accelerated by Hutchinson in 1984, outside the applicable six-year period. Defendants likewise asserted the evidence showed that suit on the SBA note was time-barred because the SBA had accelerated that note no later than January 1985 by its efforts to liquidate the collateral. Defendants also argued that evidence tended to show the parties had not intended to create

any interest in the nature of a mortgage and that the SBA was therefore not entitled to foreclosure. The district court rejected these contentions and granted summary judgment for the SBA on all issues.

## II.

Defendants renew their arguments on appeal, contending the evidence reveals disputes of material fact which render the grant of summary judgment improper. We review a grant of summary judgment under the same standard applied by the district court. *Universal Money Centers, Inc. v. AT & T,* 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). Summary judgment is appropriate if there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. *Id.* In making this determination, we view the record and the reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* Applying this standard here, we conclude that material disputes of fact preclude judgment for the SBA as a matter of law.

We turn first to the notes. The SBA seeks a judgment *in personam* against Four Way on the basis of the promissory note executed in favor of the SBA, and against Arlene Daniels as a guarantor of that note. The parties agree the applicable statute of limitations provides that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a). We have held that a cause of action accrues for purposes of section 2415(a) when the holder of the note exercises its right to accelerate. *See United States v. Gilmore,* 698 F.2d 1095, 1097 (10th Cir.1983).

Defendants contend that the SBA's claim for judgment on its note and the guaranty is time-barred. They argue that at the least a fact issue exists on whether the SBA's effort to liquidate the collateral assignment in late 1984 and early 1985 was an exercise of its right to accelerate, thereby triggering the running of the six-year statutory period.

Our consideration of this issue is hampered by the SBA's failure on appeal to address defendants' arguments and authorities with any specificity. However, our review of the evidence before us in light of defendants' authorities reveals that summary judgment was improper on the present record.

As discussed above, the six-year limitation period set out in section 2415(a) begins to run when the cause of action accrues; and accrual occurs upon acceleration. *See Gilmore,* 698 F.2d at 1097. It appears that these issues are to be determined under state law, and the parties do not argue otherwise. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 739–40, 99 S.Ct. 1448, 1464–65, 59 L.Ed.2d 711 (1979) (absent federal statutes to the contrary, rights arising under SBA program are determined by state law). The New Mexico Supreme Court has held acceleration requires "that some act, signifying an intention to accelerate must appear." *Carmichael v. Rice,* 49 N.M. 114, 158 P.2d 290, 292 (1945); *see also FDIC v. Massingill,* 24 F.3d 768, 776–77 (5th Cir. 1994) (construing New Mexico law).

Defendants here contend the SBA's attempt in 1984–85 to sell the land covered by the state land contract and thereby liquidate the collateral securing the loan constituted acceleration under state law. They rely on *United States v. Nehl,* 599 F.Supp. 324 (D.S.D.1984), in which the court held that the Farmer's Home Administration had invoked its right to accelerate by requesting that the debtor liquidate his assets and apply the proceeds to the debt in excess of the amount currently owing.

The record contains evidence that the SBA pursued a sale of the property, had it appraised, and progressed to the point of obtaining a signed purchase agreement from the putative buyers. The evidence reveals that defendant Arlene Daniels, president of Four Way, was aware of the proposed sale and requested that Four Way be given the same terms offered to the potential buyers. The record further supports the inference that the SBA believed the proposed sale would realize proceeds exceeding the amount then due on the note. This evidence is more

than sufficient to raise a fact issue as to whether the SBA's conduct amounted to an exercise of its right to accelerate the note. Accordingly, we conclude the district court erred in ruling as a matter of law that the SBA's action for *in personam* judgments on its note and the guaranty[1] was not time-barred.

Defendants further contend the district court erred in ruling that under the terms of the SBA note the SBA could recover the funds it had advanced to Hutchinson to purchase the Hutchinson note. The SBA argued below that this amount could be added to the sum due under the note because the SBA had expended that money to protect its position in the collateral, pointing to language in the note requiring the debtor to "pay all expenses of any nature . . . including but not limited to reasonable attorney's fees and costs, which Holder may deem necessary or proper in connection with the . . . protection of (including, but not limited to, the maintenance of adequate insurance) . . . the Collateral." Aplt.App. at 36.

Defendants raise numerous arguments to support their contention that the lower court erred on this issue. They assert, *inter alia*, that Ms. Daniels was liable under the express terms of the guaranty only for the principal and interest on the SBA note, that the rule of *ejusdem generis* limits the expenses recoverable under the above-quoted provision to those in the nature of the attorney's fees, costs and insurance, and that to the extent the language is ambiguous it should be construed against the SBA as the drafter of the note and the guaranty. Although these arguments cast serious doubt

upon the propriety of the ruling below, the SBA has chosen not to respond to them on appeal. We point out that under the district court's ruling, the SBA would in essence recover an *in personam* judgment on the Hutchinson note, which is itself clearly time-barred,[2] and in so doing more than double the liability of defendants in a manner arguably not supported by a reasonable construction of the language which the SBA drafted. The SBA's failure in these circumstances to offer any defense for the lower court's ruling leads us to conclude the SBA has conceded error in this regard. Accordingly, we hold the district court erred in holding that the SBA could recover the funds expended to redeem the Hutchinson note as an expense of protecting its position in the collateral for the SBA note.

### III.

We next consider the district court's ruling that the parties intended the assignment of collateral to create a mortgage. We begin by describing the legal incidents of a contract to purchase state land as governed by New Mexico law. As the SBA concedes, legal title to the public land subject to Four Way's land purchase contract remains with the state until the contract price is paid in full. *See, e.g., Romero v. State*, 97 N.M. 569, 642 P.2d 172, 174 (1982). "[T]he land is security for the payment of the purchase price and the inducement for the purchaser to pay is the fact that the State retains the title to the land until the final payment is made." *Id.* Section 10 of the New Mexico Enabling Act provides that a mortgage or other encumbrance of public lands is not valid under any circumstances.[3]

---

1. The SBA argues that the guaranty is not time-barred because it requires *written demand*, which was not made until April 27, 1988. The SBA's cause of action on the guaranty accrued when the underlying note became due, whether by acceleration or otherwise. *Western Bank v. Franklin Dev. Corp.*, 111 N.M. 259, 804 P.2d 1078, 1080 (1991). Because we hold that the district court erred in ruling as a matter of law that the underlying note was not time-barred, we hold that the court also erred in ruling as a matter of law that the guaranty was not time-barred.

2. Section 2415(a) bars the SBA from obtaining personal judgments on the basis of the Hutchinson note. Hutchinson exercised its right to accelerate that note no later than September 1984. The fact that the SBA acquired the note by assignment after Hutchinson had accelerated it does not affect the running of the limitation period. *See FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir.1993). "Assignment of a cause of action that has already accrued does not ordinarily re-commence the limitations period." *Id.*

3. Section 10 was adopted in N.M. Const. art. XXI, § 9, and is set out as a supplement to that

■ The assignment of an interest in a contract for the purchase of state lands is permitted by statute:

> Any ... contract for the purchase of state lands may be assigned as collateral security, with the approval of the commissioner of public lands; and after such approval such assignment shall have the effect of giving the assignee a lien on any ... purchase contract so assigned ... together with the improvements thereon, to secure the indebtedness specified in such assignment and any further advances or expenditures authorized to be made by the assignee by the terms of such assignment....

N.M. Stat. Ann. § 19–7–37 (Michie 1978). Under the above provision an assignment creates a lien on the contract itself rather than on the land covered by the contract.

Foreclosure of a state land contract is also governed by statute:

> The collateral assignments of record in the state land office ... upon state purchase contracts may be foreclosed in the manner provided by law for the foreclosure of mortgages on real estate, and the purchaser at any sale under such foreclosure, if otherwise qualified to lease or purchase state land, as the case may be, on the filing with the commissioner of public lands of the transfer to him of any such ... purchase contract, pursuant to any such foreclosure sale, and the payment of all delinquent payments on the ... purchase contract so transferred, shall be entitled to a new ... purchase contract on his compliance with all the conditions governing the ... purchase of state lands....

*Id.* § 19–7–41. Thus, a creditor who forecloses on a state land contract assigned as collateral for a debt obtains only the right to a new purchase contract.

The SBA concedes that under the above provisions the assignment of Four Way's land contract could not create a legal mortgage on the property as long as legal title was held by the state. Nonetheless, the SBA contends the parties to the note intended to create a mortgage lien on Four Way's equitable interest in the contract, which would attach to the land upon the issuance of the patent to Four Way. Defendant Agri Services argues that the statutes set out above preclude the creation of such an equitable mortgage in favor of the SBA. However, nothing in the language of those provisions or the purpose underlying them appears to preclude the parties from contracting for the creation of an equitable interest in the SBA which would survive to become a mortgage on the land once the patent issued. Alternatively, defendants contend that the district court erred in concluding as a matter of law that the parties intended to create such an interest.[4] We agree with this latter contention.

■ The creation of an equitable mortgage under New Mexico law is to be determined by the parties' intent. *See generally Sunwest Bank of Clovis, N.A. v. Clovis IV*, 106 N.M. 149, 740 P.2d 699 (1987); *Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960). In ruling that the parties here intended to create an equitable mortgage as a matter of law, the district court stated:

> [Defendants'] loan application to SBA listed the property at issue as collateral for a loan to be repaid in thirty years.

> Defendants intended the property to secure the loan for the full thirty years, not just the ten-year term of the state land contract.

> The SBA demonstrated its intent to treat the assignment as a mortgage by its actions, including making a thirty-year loan and buying the Hutchison prior lien.

Aplt.App. at 230. While these factors tend to show that the parties meant the assignment to extend beyond the ten-year period remaining on the land contract, other evidence in the record, viewed most favorably to defen-

---

provision in pamphlet 3, N.M. Stat. Ann. (Michie 1978).

**4.** Defendants also argue that the six-year limitations period provided by 28 U.S.C. § 2415(a) bars foreclosure as well as an action on the note.

We have resolved this issue adversely to defendants' position in *United States v. Ward*, 985 F.2d 500 (10th Cir.1993). We discern no meaningful basis upon which to distinguish the facts in *Ward* from those here.

dants, supports the conclusion that the parties did not intend to give the SBA an interest that would attach to the land itself upon issuance of the patent.

First, the collateral assignment on its face states that it is subject to the New Mexico statutes quoted above. Those statutes define the assignment as giving the assignee only a lien on the purchase contract, and provide that upon foreclosure the transferee is entitled only to a new purchase contract. Second, the circumstances existing at the time the assignment was made cast doubt upon whether the SBA did in fact rely on the assignment to provide meaningful security beyond an interest in the contract itself. The title opinion prepared in conjunction with the assignment warned the SBA that Four Way was a purchaser of only part of the land covered by the land contract and that if other purchasers defaulted on their contract obligations, a total forfeiture of everyone's interests under the contract could occur. *See* Aplt.App. at 139. Thus, Four Way's ability to obtain a patent at all was contingent in part on the conduct of third parties. Moreover, in addition to the debt owed to the state on the contract, the land contract was also subject to a prior assignment to Hutchinson to secure the Hutchinson note, which had an original principal debt of $310,000. *Id.* at 140. Third, the record reveals the SBA received notice that the balance due under the contract had been paid and that a patent to the land would be issued to Four Way among others. *Id.* at 171. The record also contains evidence that the New Mexico Commissioner of Public Lands and its legal counsel have a policy of advising "collateral assignees to enter into an agreement with the contract purchaser prior to contract termination to substitute a mortgage on the property for the collateral assignment, or to secure some other form of security for their indebtedness." *Id.* at 158. An official with the Land Commissioner wrote a memo before the contract was paid off, which sets out this policy and raises the inference that the SBA was aware prior to termination of the contract that it needed to substitute a mortgage for the assignment. *See id.* at 165. Despite evidence that the Land Commissioner's office called the SBA

loan officer handling the Four Way loan personally and advised him of the date on which the patent would issue, and evidence raising the inference that the SBA knew of the Land Commissioner's position, the record contains no evidence that the SBA took steps to substitute a mortgage for its assignment. This evidence is clearly sufficient to create a fact issue on whether the SBA intended that the assignment convert to a mortgage upon issuance of a patent.

Finally, we point out that "[a] valid agreement to execute a mortgage will be enforced in equity against the maker or third persons who have notice thereof or who are volunteers." *Owens v. Continental Supply Co.,* 71 F.2d 862, 863 (10th Cir.1934) (emphasis added); *see also Zumwalt v. Goodwin,* 133 F.2d 984, 987 (10th Cir.1943). It appears that defendant Agri Services, which took a mortgage on the land when it was patented, is owned by defendant Arlene Daniels' brother. It also appears that Agri Services had notice of the collateral assignment to the SBA. Nonetheless, a fact question exists on whether Agri Services had notice that the SBA was asserting it had a prior claim by virtue of a pre-existing equitable mortgage arising from the assignment, particularly given the SBA's failure to convert its assignment to a mortgage before the patent was issued.

**REVERSED AND REMANDED.**